Nicolas Daluiso, OSB 126155
ndaluiso@robinsontait.com
Wesley Werich, OSB 131803
wwerich@robinsontait.com
Robinson Tait, P.S.
701 Second Avenue, Suite 710
Seattle, WA 98104
Tel: (206) 676-9640
Fax: (206) 676-9659

UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF OREGON

| | |
|---|---|
| LISA CARRIGAN, individually and JACK D. SCHLICKING and LAUREN J. SCHICKLING as husband and wife and individually.<br><br>Plaintiffs Pro Se,<br><br>v.<br><br>FIRST AMERICAN TITLE INSURANCE COMPANY, REGIONAL TRUSTEE SERVICES CORPORATION, FIDELITY NATIONAL TITLE INSURANCE COMPANY, RECONTRUST COMPANY, N.A., GN MORTGAGE LLC., GUARANTY BANK, F.S.B., BAC HOME LOANS SERVICING, COUNTRYWIDE HOME LOANS SERVICING, LP., BANK OF AMERICA, N.A., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS (MERSCORP); ELAINE LOUISE HOWARD, Public Notary, d/b/a AFFORDABLE DOCUMENT PROCESSING; CHRISTINA BALANDRAN; DANIEL RODRIGUEZ, LINDA GREEN and John and Mary Does 1-10.<br><br>Defendants. | Case No.: 6:13-cv-902-TC<br><br>**DEFENDANT REGIONAL TRUSTEE SERVICES CORPORATION'S REQUEST FOR JUDICIAL NOTICE** |

**TO THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:**

Defendant Regional Trustee Services Corporation ("Regional") hereby requests that the

Court take judicial notice of the following documents:

1. Deed of Trust (Exhibit "1")

2. Appointments of Successor Trustee (Exhibit "2")

3. Notices of Default (Exhibit "3")

4. Rescission of the Notice of Default (Exhibit "4"

## BASIS OF REQUESTS FOR JUDICIAL NOTICE

Pursuant to Evidence Rule 201, the court may take judicial notice of a fact that is not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. The court is required to take judicial notice if requested by a party and supplied with the necessary information. ER 201(d). Judicial notice may also be taken at any stage in the proceeding. ER 201(f).

The above-referenced documents are all recorded with the court and/or county recorder's office and constitute public documents, they are not subject to reasonable dispute and are capable of accurate and ready determination. Thus, such documents are appropriate for the court's consideration under a request for judicial notice. Based on the abovementioned, the court may take judicial notice of Exhibits 1-4.

DATED this 30th day of December, 2013.

/s/ Nicolas Daluiso
Nicolas Daluiso, OSB #126155
Wesley Werich, OSB #131803
Robinson Tait, P.S.
Attorneys for Regional

*Law Offices*
ROBINSON TAIT, P.S.
710 Second Avenue, Suite 710
Seattle, Washington 98104

EXHIBIT – 1

First American Title / 7195-1098843 (RL, /
,0760247 & 1231909 / 1808220000100

*163109120*

Guaranty Bank, F.S.B.
4000 West Brown Deer Road
Brown Deer, WI 53209

85
10
11



610  163109128  D2 001 001

WHEN RECORDED MAIL TO

Guaranty Bank, F.S.B.
P.O. Box 245022
Milwaukee, WI 53224
Attn: Doc Control Dept.

Division of Chief Deputy Clerk
Lane County Deeds and Records

2007-066363

$106.00

00945569200700663630170173

09/25/2007 10:29:55 AM

RPR-DTR  Cnt=1  Stn=6  CASHIER 07
$85.00 $10.00 $11.00

TAX ACCOUNT NUMBER
18-08-22-00-00100;
True and Actual Consideration is:
$ 417,000.00

———— [Space Above This Line For Recording Data] ————

# DEED OF TRUST

Mortgage Electronic Registration Systems, Inc. (MERS) is the Grantee of this Security Instrument
MIN 100016500007195406

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated September 14, 2007
together with all Riders to this document.
(B) "Borrower" is D. JACK SCHICKLING, J. Lauren Schickling

Borrower is the trustor under this Security Instrument.
(C) "Lender" is GN Mortgage, LLC

Lender is a Limited Liability Company
organized and existing under the laws of Wisconsin
Lender's address is 6950 SW Hampton, #200, Tigard, OR  97223

(D) "Trustee" is Regional Trustee Services Corp.

11743754
OREGON - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

11743754
Form 3038  1/01

VMP®-6A(OR) (0510)
Page 1 of 16          Initials
          VMP Mortgage Solutions, Inc.

Recording Return To
First American Title
PO Box 10146
Eugene, OR 97440

(E) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) **"Note"** means the promissory note signed by Borrower and dated September 14, 2007 .
The Note states that Borrower owes Lender Four Hundred Seventeen Thousand And
Zero/100 Dollars
(U.S. $ 417,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than October 01, 2037 .

(G) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(H) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider  ☐ Condominium Rider  ☐ Second Home Rider
☐ Balloon Rider  ☐ Planned Unit Development Rider  ☐ 1-4 Family Rider
☐ VA Rider  ☐ Biweekly Payment Rider  ☐ Other(s) [specify]

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items"** means those items that are described in Section 3.

(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

11743754  11743754

**(Q)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)** "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

|     County    |     of     |     Lane      |     : |
|---------------|------------|---------------|-------|
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

See attached legal description

which currently has the address of

17620 HWY 126                                     [Street]
Walton                    [City], Oregon 97490    [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

11743754

11743754

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community

Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

11743754

Initials:

11743754

Form 3038   1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

11743754

11743754

Initials

Form 3038   1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

11743754

11743754

Initials:

Form 3038 1/01

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

11743754

11743754

Initials

Form 3038   1/01

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

11743754

-6A(OR) (0510)

Page 11 of 15

11743754

Initials

Form 3038  1/01

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

11743754

11743754

Initials: 

Form 3038   1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Attorneys' Fees.** As used in this Security Instrument and in the Note, attorneys' fees shall include those awarded by an appellate court.

**26. Protective Advances.** This Security Instrument secures any advances Lender, at its discretion, may make under Section 9 of this Security Instrument to protect Lender's interest in the Property and rights under this Security Instrument.

**27. Required Evidence of Property Insurance.**

<b>WARNING</b>

Unless you provide us with evidence of the insurance coverage as required by our contract or loan agreement, we may purchase insurance at your expense to protect our interest. This insurance may, but need not, also protect your interest. If the collateral becomes damaged, the coverage we purchase may not pay any claim you make or any claim made against you. You may later cancel this coverage by providing evidence that you have obtained property coverage elsewhere.

11743754

Initials:

11743754

Form 3038  1/01

You are responsible for the cost of any insurance purchased by us. The cost of this insurance may be added to your contract or loan balance. If the cost is added to your contract or loan balance, the interest rate on the underlying contract or loan will apply to this added amount. The effective date of coverage may be the date your prior coverage lapsed or the date you failed to provide proof of coverage.

The coverage we purchase may be considerably more expensive than insurance you can obtain on your own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     _____ (Seal)
                                     D. JACK SCHICKLING          -Borrower


_____     _____ (Seal)
                                     J. Lauren Schickling        -Borrower


_____ (Seal)        _____ (Seal)
                    -Borrower                            -Borrower


_____ (Seal)        _____ (Seal)
                    -Borrower                            -Borrower


_____ (Seal)        _____ (Seal)
                    -Borrower                            -Borrower

**STATE OF OREGON,**                                      County ss:
   On this        day of                , personally appeared the above named
D. JACK SCHICKLING and J. Lauren Schickling

and acknowledged the foregoing instrument to be his/her/their voluntary act and deed.

My Commission Expires:                                   Before me:

(Official Seal)                                          *See attach'd California Notary*

                                  Notary Public for Oregon

11743754                                                                      11743754

VMP-6A(OR) (0510)              Page 15 of 15        Initials:                  Form 3038   1/01



FIRST AMERICAN

STATE OF CALIFORNIA *El Dorado*
COUNTY OF _____ }ss.

On *September 19, 2007* before me, *Norma Quigley Notary Public*,
personally appeared *D. Jack Schickling and J. Lauren Schickling*
_____, personally known to me

(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are

subscribed to the within instrument and acknowledged to me that he/she/they executed the same

in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the

person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature *Norma Quigley*

> NORMA QUIGLEY
> COMM. # 1761230
> NOTARY PUBLIC-CALIFORNIA
> EL DORADO COUNTY
> My Comm. Exp. SEPT. 9, 2011

(This area for official notarial seal)

Title of Document _____

Date of Document _____ No. of Pages _____

Other signatures not acknowledged _____

3008 (1/94) (General)
First American Title Insurance Company

## Exhibit "A"

Real property in the County of Lane, State of Oregon, described as follows:

PARCEL I:

The North ½ of the Northeast ¼ of Section 22, Township 18 South, Range 8 West of the Willamette Meridian, in Lane County, Oregon;

EXCEPT that part conveyed to Olive E. Gooley by deed recorded July 12, 1916 in Book 111, Page 274, Lane County Oregon Deed Records, Lane County, Oregon;

AND ALSO EXCEPT that part conveyed to William E. Jackson and Goldie B. Jackson by deed recorded December 12, 1944, in Volume 279, Page 562, of the Deed Records of Lane County, Oregon.

PARCEL II:

An easement for ingress and egress over the presently traveled road connecting Parcel I to a public roadway over the following described property:

The Northwest ¼ of the Northwest ¼ of Section 23, Township 18 South, Range 8 West of the Willamette Meridian, in Lane County, Oregon;

EXCEPTING THEREFROM that certain parcel of land conveyed to the State of Oregon by and through its State Highway Commission by deed executed October 22, 1959, recorded October 27, 1959, Recorder's Reception No. 81810, Lane County Oregon Deed Records;

EXCEPT that portion lying within the Southern Pacific Railroad right of way.

Tax Parcel Number: 0760247 and 1231909

EXHIBIT – 2

APPOINTMENT OF SUCCESSOR TRUSTEE

I CERTIFY THAT THIS IS A FULL, TRUE AND CORRECT COPY OF THE ORIGINAL RECORDED IN THE OFFICE OF THE COUNTY

KNOW ALL MEN BY THESE PRESENTS, that D Jack Schickling, And J Lauren Schickling, as grantor(s), and Regional Trustee Services Corp., as the Trustee, and Mortgage Electronic Registration Systems, Inc., is the Beneficiary under that certain Trust Deed dated 09/16/2007, and recorded 09/25/2007 as Recorder's fee/file/instrument/microfilm/reception No. 2007-066363 of the Mortgage Records of Lane County, Oregon. The undersigned, who is the present Beneficiary under said Trust Deed desires to appoint a new trustee in the place and stead of the original trustee named above;

BY: s/ Britney Burdine
LSI TITLE COMPANY OF OREGON, LLC.

NOW THEREFORE, in view of the premises, the undersigned hereby appoints RECONTRUST COMPANY, N.A., whose address is 1800 Tapo Canyon Rd., CA6-914-01-94 SIMI VALLEY, CA 93063 as successor trustee under said Trust Deed, to have all the powers of said original trustee, effective immediately.

In construing this instrument, and whenever the context so requires, the singular includes the plural.

IN WITNESS WHEREOF, the undersigned Beneficiary has executed this document. If the undersigned is a corporation, it has caused its name to be signed and its seal affixed by an officer or other person duly authorized to do so by its board of directors.

DATED: JUL 1 6 2010 ,2010.

BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP

By
Name: CHRISTINA BALANDRAN
Title: Assistant Secretary

STATE OF CALIFORNIA )
) ss.
County of VENTURA )

On JUL 1 6 2010 , before me, E. L. Howard , personally appeared CHRISTINA BALANDRAN , personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Notary Public for CALIFORNIA
My commission expires: AUG 2 1 2010

(SEAL)

APPOINTMENT OF SUCCESSOR TRUSTEE
RE: Trust Deed from
D JACK SCHICKLING and J LAUREN SCHICKLING
          Grantor
     To
RECONTRUST COMPANY, N.A.
     Trustee TS No. 10 -0077787

After recording return to:
RECONTRUST COMPANY, N.A.
C/O RECONTRUST COMPANY, N.A.
400 COUNTRYWIDE WAY SV-35
SIMI VALLEY, CA 93065

E. L. HOWARD
Commission # 1689188
Notary Public - California
Ventura County
My Comm. Expires Aug 21, 2010

E. L. HOWARD
Commission # 1689188
Notary Public - California
Ventura County
My Comm. Expires Aug 21, 2010

ORAPTOFSUC (07/07)

EXHIBIT – 3

THIS IS TO CERTIFY THAT THIS IS A FULL, TRUE AND
CORRECT COPY OF THE ORIGINAL RECORDED
IN THE OFFICE OF LANE COUNTY

RECORDING FEE:  **$52.00**

RECORDED ON:  **September 28, 2011**

AS DOCUMENT NO:  **2011-043492**

BY:  **s/ BRITNEY BURDINE**

LSI TITLE COMPANY OF OREGON, LLC.

After recording return to:
Attn: Foreclosure Department
RECONTRUST COMPANY, N.A.
400 National way
SIMI VALLEY, CA 93065

## NOTICE OF DEFAULT AND ELECTION TO SELL

Reference is made to that certain Trust Deed made by D. JACK SCHICKLING AND J. LAUREN SCHICKLING, as grantors, to REGIONAL TRUSTEE SERVICES CORP., as Trustee, in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as Beneficiary, dated 09/14/2007, recorded 09/25/2007, in the mortgage records of Lane County, Oregon, as Recorder's fee/file/instrument/microfilm/reception Number 2007-066363, and subsequently assigned to BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP by Assignment recorded 07/21/2010 in Book/Reel/Volume Number at Page Number as Recorder's fee/file/instrument/microfilm/reception Number 2010-035694, covering the following described real property situated in said county and state, to wit:

SEE ATTACHED LEGAL DESCRIPTION

PROPERTY ADDRESS:  17620 HWY 126
                   WALTON, OR 97490

There is default by the grantor or other person, or by their successor in interest, owing an obligation, the performance of which is secured by said Trust Deed, or by their successor in interest, with respect to provisions therein which authorize sale in the event of default of such provision. The default for which foreclosure is made is grantors' failure to pay when due the following sums: monthly payments of $2,774.78 beginning 10/01/2009; plus late charges of $126.69 each month beginning 10/01/2009 payment prior accrued late charges of $-1,013.52; plus advances of $105.00; together with title expense, costs, trustee's fees and attorney's fees incurred herein by reason of said default; and any further sums advanced by the Beneficiary for the protection of the above described real property and its interest therein.

By reason of said default, the Beneficiary has declared all sums owing on the obligation secured by said Trust Deed immediately due and payable, said sums being the following, to wit: $407,135.45 with interest thereon at the rate of 6.125 percent per annum beginning 09/01/2009 plus late charges of $126.69 each month beginning 10/01/2009 until paid; plus prior accrued late charges of $-1,013.52; plus advances of $105.00; together with title expense, costs, trustee's fees and attorney's fees incurred herein by reason of said default; and any further sums advanced by the Beneficiary for the protection of the above described real property and its interest therein.

| | |
|---|---|
| **NOTICE OF DEFAULT AND ELECTION TO SELL**<br>RE: Trust Deed from<br>**D JACK SCHICKLING and J LAUREN SCHICKLING,**<br>Grantor<br>To<br>**RECONTRUST COMPANY, N.A.,**<br>Trustee  TS No. 10 -0077787 | **For Additional Information:**<br>**Please Contact**<br>**Foreclosure Department**<br>**RECONTRUST COMPANY, N.A.**<br>**RECONTRUST COMPANY, N.A.**<br>**1800 Tapo Canyon Rd., CA6-914-01-94**<br>**SIMI VALLEY, CA 93063**<br>**(800)-281-8219** |

Notice is hereby given that the Beneficiary and Trustee, by reason of said default, have elected and do hereby elect to foreclose the Trust Deed by advertisement and sale pursuant to ORS 86.705 to 86.795, and to cause to be sold at public auction to the highest bidder for cash the interest in the described property which the grantor had, or had the power to convey, at the time the grantor executed the Trust Deed, together with any interest the grantor or grantor's successors in interest acquired after the execution of the Trust Deed, to satisfy the obligations

ORNOD (01/10)

secured by the Trust Deed and the expenses of the sale, including the compensations of the Trustee as provided by law, and reasonable fees of Trustee's attorneys.

The sale will be held at the hour of 10:00 AM , in accordance with the standard of time established by ORS 187.110 on Friday, February 03, 2012, at the following place: inside the main entrance to the Lane County Courthouse, 125 E. 8th Avenue, Eugene, Lane County, OR, which is the hour, date and place last set for the sale.

Notice is further given that any person named in ORS 86.753 has the right, at any time prior to five days before the date last set for the sale, to have this foreclosure proceeding dismissed and the Trust Deed reinstated by payment to the Beneficiary of the entire amount then due (other than such portion of the principal as would not then be due had no default occurred) and by curing every other default complained of herein by tendering the performance required under the obligation or Trust Deed, in addition to paying said sums or tendering the performance necessary to cure the default, by paying all costs and expenses actually incurred in enforcing the obligation and Trust Deed, together with trustee's and attorney's fees not exceeding the amounts provided by ORS 86.753.

In constructing this notice, the singular includes the plural, the word "grantor" includes any successor in interest to the grantor as well as any other person owing an obligation, the performance of which is secured by said Trust Deed, and the words "Trustee" and "Beneficiary" include their respective successors in interest, if any.

RECONTRUST COMPANY, N.A.     SEP 2 3 2011

MARIA PILAR VILLAVICENCIO, Authorized Signer

STATE OF **CALIFORNIA** )
                                     ) ss.
COUNTY OF **VENTURA**

On ____ SEP 2 3 2011 ____, before me, **JEANINE HOFFMAN** ____, notary public, personally appeared **Maria Pilar Villavicencio** ____, ~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Notary Public for **CALIFORNIA**
My commission expires: **APR 1 1 2013**          (SEAL)
**JEANINE HOFFMAN**

THIS IS AN ATTEMPT TO COLLECT A DEBT AND INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER IF YOU HAVE OR ARE IN THE PROCESS OF OBTAINING DISCHARGE OF THE DEBT FROM A BANKRUPTCY COURT, THIS DOCUMENT IS NOT AN ATTEMPT TO COLLECT A DEBT, BUT ONLY ENFORCEMENT OF LIEN RIGHTS AGAINST THE PROPERTY.

JEANINE HOFFMAN
Commission # 1840486
Notary Public - California
Los Angeles County
My Comm. Expires Apr 11, 2013

## Exhibit "A"

Real property in the County of Lane, State of Oregon, described as follows:

PARCEL I:

The North ½ of the Northeast ¼ of Section 22, Township 18 South, Range 8 West of the Willamette Meridian, in Lane County, Oregon;

EXCEPT that part conveyed to Olive E. Gooley by deed recorded July 12, 1916 in Book 111, Page 274, Lane County Oregon Deed Records, Lane County, Oregon;

AND ALSO EXCEPT that part conveyed to William E. Jackson and Goldie B. Jackson by deed recorded December 12, 1944, in Volume 279, Page 562, of the Deed Records of Lane County, Oregon.

PARCEL II:

An easement for ingress and egress over the presently traveled road connecting Parcel I to a public roadway over the following described property:

The Northwest ¼ of the Northwest ¼ of Section 23, Township 18 South, Range 8 West of the Willamette Meridian, in Lane County, Oregon;

EXCEPTING THEREFROM that certain parcel of land conveyed to the State of Oregon by and through its State Highway Commission by deed executed October 22, 1959, recorded October 27, 1959, Recorder's Reception No. 81810, Lane County Oregon Deed Records;

EXCEPT that portion lying within the Southern Pacific Railroad right of way.

Tax Parcel Number: 0760247 and 1231909



EXHIBIT – 4

**RECONTRUST COMPANY**
400 National Way
SIMI VALLEY, CA 93065
TS No. 10 -0077787
TSG No. 1004076150RGSI

Lane County Clerk
Lane County Deeds & Records

**2012-036806**

07/23/2012 03:19:49 PM

RPR-RESC   Cnt=1 Stn=1 CASHIER 05
$15.00 $11.00 $10.00 $16.00

$52.00

## RESCISSION OF NOTICE OF DEFAULT

Reference is made to that certain Trust Deed in which D. JACK SCHICKLING AND J. LAUREN SCHICKLING was grantor, REGIONAL TRUSTEE SERVICES CORP. was Trustee and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. was beneficiary, said Trust Deed recorded on 09/25/2007 or as fee/file/instrument/microfilm/section No. 2007-066363 of the mortgage of records of Lane County, Oregon and conveyed to the said Trustee the following real property situated in said county:

SEE ATTACHED FOR LEGAL DESCRIPTION

Commonly Known As:     17620 HWY 126
                       WALTON, OR 97490

A notice of grantor's default under said Trust Deed, containing the beneficiary's or Trustee's election to sell all or part of the above described real property to satisfy grantor's secured by said Trust Deed was recorded on 09/28/2011, in said mortgage records . or as fee/file/instrument/microfilm No. 2011-043492

Now therefore, notice is hereby given that the undersigned Trustee does hereby rescind, cancel, and withdraw said notice of default and election to sell; said Trust Deed and all obligations secured thereby hereby are reinstated and shall be and remain in force and effect the same as if no acceleration had occurred and as if said notice of default had not been given; it being understood, however, that this rescission shall not be construed as waiving or affecting any breach or default (past, present or future) under said Trust Deed or as impairing any right or remedy thereunder, or as modifying or altering in any respect of the terms, covenants, conditions or obligations thereof, but is and shall be deemed to be only an election without prejudice, not to cause a sale to be made pursuant to said notice so recorded.

IN WITNESS WHEREOF, the undersigned RECONTRUST COMPANY,  N.A. as Trustee has hereunto set his hand and seal:  if the undersigned is a corporation, it has caused its corporate name to be signed and its corporate seal to be affixed hereunto by its officers duly authorized thereunto by order of its Board of Directors.

Exhibit 14     p81

DATED: **JUL 2 0 2012**

RECONTRUST COMPANY, N.A.

_Loucineh Mansourian_ **JUL 2 0 2012**
**Assistant Vice President**

State of **CALIFORNIA** )
County of ~~VENTURA~~ ) ss.

On **JUL 2 0 2012** , before me, **RAMON OLIVAS** , notary public, personally appeared
_____Loucineh Mansourian_____ , who proved to me on the basis of satisfactory evidence to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or
the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal.

_____
**RAMON OLIVAS**
Notary Public in and for the State of **CA**
Residing at **LOS ANGELES**
My Commission Expires: ~~until 2 0 2012~~

**JAN 0 5 2013**

RAMON OLIVAS
Commission # 1829355
Notary Public - California
Los Angeles County
My Comm. Expires Jan 5, 2013

_Ex. 14 pg 2_

## EXHIBIT "A"

**REF. NO.: 10-0077787**

PARCEL I:

THE NORTH ½ OF THE NORTHEAST ¼ OF SECTION 22, TOWNSHIP 18 SOUTH, RANGE 8 WEST OF THE WILLAMETTE MERIDIAN, IN LANE COUNTY, OREGON;

EXCEPT THAT PART CONVEYED TO OLIVE E. GOOLEY BY DEED RECORDED JULY 12, 1916 IN BOOK 111, PAGE 274, LANE COUNTY OREGON DEED RECORDS, LAND COUNTY, OREGON;

AND ALSO EXCEPT THAT PART CONVEYED TO WILLIAM E. JACKSON AND GOLDIE B. JACKSON BY DEED RECORDED DECEMBER 12, 1944, IN VOLUME 279, PAGE 562, OF THE DEED RECORDS OF LANE COUNTY, OREGON.

PARCEL II:

AN EASEMENT FOR INGRESS AND EGRESS OVER THE PRESENTLY TRAVELED ROAD CONNECTING PARCEL I TO A PUBLIC ROADWAY OVER THE FOLLOWING DESCRIBED PROPERTY:

THE NORTHWEST ¼ OF THE NORTHWEST ¼ OF SECTION 23, TOWNSHIP 18 SOUTH, RANGE 8 WEST OF THE WILLAMETTE MERIDIAN, IN LANE COUNTY, OREGON;

EXCEPTING THEREFROM THAT CERTAIN PARCEL OF LAND CONVEYED TO THE STATE OF OREGON BY AND THROUGH ITS STATE HIGHWAY COMMISSION BY DEED EXECUTED OCTOBER 22, 1959, RECORDED OCTOBER 27, 1959, RECORDER'S RECEPTION NO. 81810, LANE COUNTY OREGON DEED RECORDS;

EXCEPT THAT PORTION LYING WITHIN THE SOUTHERN PACIFIC RAILROAD RIGHT OF WAY.

*Ex. 14    pg 3*

**Fidelity National Title Insurance Company**